**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case Nos. 1:20-mj-00056** |
| **v.** | : | **1:20-mj-00059** |
| | : | **1:20-mj-00063** |
| **AMINA WASHINGTON-BEY,** | : | **1:20-mj-00175** |
| | : | |
| **Defendant.** | : | |

## STATEMENT OF OFFENSE

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Defendant Amina Washington-Bey agrees and stipulates as follows:

*Background Information*

On April 5, 2020, Defendant Amina Washington-Bey ("Washington-Bey" or "Defendant") attempted to jump the security barrier separating the Ellipse from E Street N.W., near the south lawn of the White House in Washington D.C.

The White House complex, which includes, among other things, the White House Mansion and the White House grounds, is a restricted area in Washington, D.C. Only people with authorized access are permitted inside the White House complex, which has both permanent and movable security barriers surrounding it ("security barriers"). There are signs posted along the security barriers that state "Restricted Area, Do Not Enter."

At all relevant times, Officers Alexander Belot, George Zaki, Austin Huntington, Ryan Mangum, Andrew Ward, and Jabari Gilliam were officers with the United States Secret Service ("Secret Service" or "USSS") Uniformed Division ("UD") assigned to the White House and its surrounding grounds. On April 5, 2020, while in full USSS police uniform, Officer Belot observed the Defendant acting in an unusual manner in the area of the Ellipse near 1599 E Street, N.W., in Washington, D.C. Officer Belot engaged the defendant and asked him if he

1

required assistance or had lost anything in the area.  The defendant replied "no and that everything is fine."  The defendant disengaged from conversation with Officer Belot and began walking around the area.

Officer Zaki, also in full USSS police uniform, observed the defendant walking around the area after the defendant had disengaged from conversation with Officer Belot.  Officer Zaki observed the Defendant approach the security barrier and begin to climb up it, grabbing the metal fencing on top and pulling himself up off the ground in a climbing motion.  Officer Zaki issued a command for the defendant to stop climbing the barrier and get on the ground.  The defendant complied with the orders, climbed down, and laid down on the ground.  The defendant was then placed under arrest.

The defendant was read his Miranda rights, waived them, and consented to speak with Secret Service agents.  During that discussion, the defendant stated that he attempted to climb the barrier because "there was a change in the area."  The defendant also made reference to how things are changing in the world, but did not offer any specifics.  The defendant said that he had no intention of trying to harm the President.  When asked why he had been hanging around the White House since early morning that day, the defendant responded that he likes the area around the White House and has friends in the area.

On April 6, 2020, the government sought and obtained a complaint charging the defendant with two counts in Case No. 1:20-mj-00056: (1) entering or remaining in a restricted area or grounds, in violation of 18 U.S.C. § 1752(a)(1); and (2) entering restricted public property, in violation of 22 D.C. Code § 3302(b).

At the defendant's initial appearance before Magistrate Judge Deborah A. Robinson that same day (April 6, 2020), the government orally requested that the defendant be released with conditions.  That motion was granted, and those conditions were set forth in an Order Setting

Conditions of Release, filed on April 13, 2020 (First 04/13/20 order), and included the following conditions, among others: to report to Pretrial Services as directed; to report to Community Connections on April 7, 2020 at 8:30 a.m.; to maintain mental health services, to include a medication regimen, as directed by Pretrial Services; to sign all releases of information with the defendant's mental health provider to allow Pretrial Services to obtain compliance information; to report to defendant's probation officer within 48 hours; to report to Community Connections by 10 a.m. on April 7, 2020 to obtain medication; to stay away from White House complex, with a map showing the area; and to not get rearrested.  *See* First 04/13/20 Order at 1-2.

The defendant was also verbally advised of his release conditions by Magistrate Judge Robinson from the bench.  With regards to the stay away conditions, Magistrate Judge Robinson specifically advised the defendant that he needed to stay away from the area around the White House for as long as the case was pending and that he would receive a map showing him the area to stay away from.  In response, the defendant asked how long the case would be pending.

Following Court on April 6, 2020, Pretrial Services Officer Christine Schuck sent the defendant's case manager at Community Connections an email listing all the release conditions and all the paperwork related to the release conditions, including the map reflecting the area covered by the White House stay away order.  As required by his release conditions, the defendant reported to Community Connections on April 7, 2020, where he signed all the paperwork Ms. Schuck had sent over and was provided a copy of the White House stay away map.  The stay away map defines the stay away area as the area bounded by and including K Street, NW; 13th Street, NW; Pennsylvania Avenue, NW; 12th Street, NW; Constitution Avenue, NW; and 19th Street, NW.  The White House stay order was still in effect on April 9, 2020.

On April 9, 2020, UD Officer Huntington was walking southbound on 17th Street NW towards State Place, NW, when he observed the defendant hiding behind a pillar and repeatedly

looking around it at the Secret Service entrance post located at 1699 State Place, NW,
Washington, D.C.  This area was within the defendant's current stay away area.  After
confirming the stay away order, Officer Huntington placed the defendant under arrest for
contempt, as the defendant was present within the area that the defendant was required to stay
away from as a condition of his prior release.

On April 10, 2020, the government sought and obtained a complaint charging the
defendant, with one count in Case No. 1:20-mj-00059: (1) contempt of court, in violation of 18
U.S.C. § 401(3).  At the defendant's initial appearance before Magistrate Judge Deborah A.
Robinson that same day (April 10, 2020), the government orally requested that the defendant be
released with conditions.  That motion was granted, and the defendant was released on the same
conditions as the prior case, including to stay away from White House complex with a map and
to maintain mental health services, to include medication regimen, as directed by Pretrial
Services.  Judge Robinson also set an additional condition that when the defendant is released he
wait outside the jail for his case manager, so that his case manager can assist the defendant with
obtaining his medication.  The motion was granted, those conditions were set forth in an Order
Setting Conditions of Release, filed on April 13, 2020 (Second 04/13/20 order), and the
defendant was released.  Second Order at 1-2.

On April 17, 2020, Sergeant Ward observed the defendant on G Street, NW between 15th
Street and 14th Street, NW.  Officer Mangum responded to the area and observed the defendant
in the vicinity of 14th Street and G Street, NW, where the defendant had been stopped by
Sergeant Ward.  At the time the defendant was stopped, he had been travelling eastbound on G
Street.

Officer Mangum recognized the defendant and had prior knowledge of an active White
House stay away order for the defendant due to his prior arrests.  To confirm defendant's

identity and that there was in fact an active stay away order, Officer Mangum requested the defendant's identification and contacted the Secret Service Joint Operations Center (JOC).

While waiting for the JOC to confirm the defendant's stay away order, Officer Mangum asked the defendant if he knew he was not supposed to come back to the White House. The defendant responded that he knew he was not supposed to be there, but that he did not have the paperwork. The JOC then confirmed the existence of the defendant's stay away order and an active arrest warrant because the defendant had violated his terms of parole in an unrelated D.C. Superior Court Case. Officer Mangum then placed the defendant under arrest for contempt, as the defendant was present within the area that he was required to stay away from as a condition of his prior release and because there was an active warrant for the defendant.

On April 18, 2020, the government sought and obtained a complaint charging the defendant with one count in Case Number 1:20-mj-00063: (1) contempt of court, in violation of 18 U.S.C. § 401(3).

On April 20, 2020, at the defendant's initial appearance before Magistrate Judge Robinson, the Government moved for a competency evaluation, a temporary 10-day hold to resolve the issues relating to the superior court warrant, and to file a motion to revoke the defendant's conditions of release. The court granted the requests.

On May 15, 2020, the parties held a joint competency hearing and hearing on the conditions of release. The defendant was found competent and Judge Robinson ordered the defendant's release. *See* Additional Conditions of Release at 1 (Case Number 1:20-mj-00063, ECF #15). This order added a few additional conditions and stated that "All other conditions of release previously imposed remain in effect." *Id.* This included the White House stay away order.

On September 5, 2020, at approximately 3:34 a.m., Sergeant Ward, while on duty,

observed an individual, who he recognized as the defendant, in front of the Willard Hotel at the address of 1401 Pennsylvania Avenue, N.W., Washington D.C. 20004.  He believed that the defendant had an active stay away order.

Officer Gilliam, while on routine vehicle patrol, made a left turn from 14th Street, N.W., onto Pennsylvania Avenue, N.W., where he saw Sergeant Ward's van parked and Sergeant Ward getting out of the van.  Officer Gilliam pulled over and saw Sergeant Ward starting to speak with an individual, later identified as the defendant.  Sergeant Ward was asking to see the defendant's identification and whether he had any weapons on him.  Officer Gilliam saw the defendant give Sergeant Ward an identification card and the defendant stated that he "did not have any weapons, but had mace for protection."  The defendant was in possession of pepper spray. Sergeant Ward handed the identification card to Officer Gilliam and asked Officer Gilliam if he knew who the individual was.  Officer Gilliam said he did not and Sergeant Ward said that he recognized the individual as someone who was known to jump the White House fence and was pretty sure there was an active stay away order against the individual.  Sergeant Ward told Officer Gilliam to run an NCIC/WALES check on the defendant and check for an active stay away order with the JOC.  Officer Gilliam conducted a NCIC/Wales name check and requested confirmation for the stay-away from the JOC.  The Secret Service Court Liaison confirmed an active stay-away order for the defendant.

Officer Gilliam then placed the defendant under arrest for contempt, as the defendant was present within the area that the defendant was required to stay away from as a condition of his prior releases.

At approximately, 4:00 a.m., a Secret Service Special Agent and officer responded to attempt to interview the defendant.  At approximately 4:49 a.m., Officer Gilliam read Miranda to the defendant.  When asked if he understood his rights, the defendant replied "Yes."  When

asked if he was willing to waive his rights, the defendant replied "Yes." The Secret Service Special Agent and officer asked the defendant if he was currently under the influence of any drugs or alcohol. The defendant replied "No." They reiterated to the defendant that he did not have to speak with them if he did not feel comfortable or in the right mental state to do so. The defendant advised that he did not mind answering questions.

The defendant advised that he is currently homeless and was out on a walk when he was stopped by UD Officers. The defendant stated that he did not know he had an active stay away order and did not realize that he was not allowed to be in the area of the White House Complex. When asked about his mental health history, the defendant advised that he has previously been diagnosed with Schizophrenia and PTSD. The defendant added that he has received treatment at CPEP for the previously mentioned mental health disorders. The defendant advised that he has been prescribed medication for Schizophrenia and PTSD, but could not recall the names of his prescriptions. The defendant stated that he was last at CPEP approximately 2 to 3 weeks ago. The defendant also advised that he has received outpatient treatment at Community Connections. The defendant advised that he could not recall the names of the medications prescribed to him by the medical staff at Community Connections. The defendant advised that he last took his prescribed medications approximately 2 or 3 days ago and again was unable to recall the names of his prescriptions. The defendant then advised that he had a medicine container on his person when he was arrested.

_____

I have read this Statement of Offense and carefully reviewed every part of it with my attorney, Michelle Peterson. I am fully satisfied with the legal services provided by my attorney in connection with this Statement of Offense and all matters relating to it. I fully understand this Statement of Offense and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to fully understand this Statement of Offense. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

Date: 10-7-2020

Amina Washington-Bey
Defendant

I have read this Statement of Facts and carefully reviewed it with my client and discussed it fully. I concur in my client's agreement with, and acceptance of, this Statement of Facts.

Date: 10/7/2020

Michelle Peterson
Attorney for Defendant

8